```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**GERALD G. LITTLE**                                        **CIVIL ACTION**

**VERSUS**                                                  **NO. 15-268**

**CHARLES E. MIZELL, JR., ET AL.**                          **SECTION "B"(1)**

### ORDER AND REASONS

Before the Court is Charles Mizell and the City of Bogalusa's (hereinafter "Defendants") motion for summary judgment. Rec. Doc. 16. Plaintiff Gerald G. Little (hereinafter "Plaintiff" or "Little") filed an opposition memorandum. Rec. Doc. 19. Thereafter, the Court granted Defendants leave to file a reply memorandum. Rec. Doc. 24. For the reasons outlined below,

**IT IS ORDERED** that the Motion is **GRANTED**.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of Plaintiff's employment with the City of Bogalusa. Plaintiff worked for the City of Bogalusa in various capacities for approximately twenty-six years. Rec. Docs. 16-2 at 1; 19-4 at 1. Most recently, he served as a sewer treatment operator in the City's Water Department. Rec. Doc. 3 at 2. Plaintiff claims that he was a member of Local Union No. 483 of the American Federation of State, County, and Municipal Employees, and that, pursuant to the contract between the City and the Union, all overtime opportunities had to first be offered to the most senior person in the pertinent department. *Id.* at 2-3. Plaintiff

further alleges that he reported several violations of this rule to his supervisor, Don Jones. *Id*. at 3. Jones purportedly told him "that if the workers would not follow the correct procedure for reporting overtime, he would be correcting it himself on the time sheets." *Id*. at 4.

According to Plaintiff, on January 29, 2014, another sewer treatment operator, Oscar Peters, worked an overtime shift without first contacting him, allegedly in violation of the Union contract. *Id.* When Plaintiff discovered the violation, he admittedly removed Peters's name from the time sheet and wrote in his own. *Id*. On February 4, 2014, Peters and Little got into a confrontation concerning the overtime issue. Rec. Doc. 19-4 at 4. Days later, Plaintiff was told to attend a meeting with James Hall, the Public Works Supervisor, Don Jones, the Treatment Plant Supervisor, Charlie Bulloch, the Union President, and David Jacobs, the Union Treasurer, to discuss the confrontation with Peters. Rec. Docs. 16-1 at 3; 16-5 at 29-31. The outcome of that meeting is not totally clear. In his deposition, Little first claims that he was told he would be "laid off for three days," presumably meaning he would be suspended. *Id*. However, after Peters entered the meeting and Little once again lost his temper, James Hall allegedly told him that he was being fired for payroll fraud. *Id*. at 32.

Little then claims that Charlie Bulloch came up to him after the meeting and told him that he was able to convince Hall to hold

2

off on firing him and that he would be "laid off," or suspended, without pay until another meeting occurred. *Id*. at 33-34. The next morning, Little claims that he met with the Mayor, Charles Mizell. *Id*. at 35. While the purpose of that meeting is not very clear, Little claims that the Mayor told him that he "allows his supervisors to do whatever they feel is the right thing [to] do, and if he think[s] they made the wrong decision, he'd fire their ass." *Id*. at 35. Approximately six days after the incident, Little allegedly went back to Bulloch to see if he could facilitate another meeting. *Id*. at 34. Bulloch then supposedly told him that he had been fired. *Id*. Despite this, Little contends that he arranged a meeting with personnel director Sandy Bloom who allegedly told him that the Mayor relayed to her that he had been fired, but that if Hall allowed him back to work, he was looking at a thirty-to-ninety-day suspension. *Id*. at 36. However, Little then told Bloom that he thought it was in his best interest just to retire, so she arranged for him to fill out his retirement paperwork. *Id*. at 36-38. His paperwork was approved and deemed effective February 6, 2014. Rec. Doc. 19-4 at 5. The City has provided Little with full retirement benefits since that point, but he nonetheless feels like he was forced into retirement. *Id*. at 39-40, 42.

On January 28, 2015, Little filed suit against the City of Bogalusa and Charles Mizell, Jr. in his individual capacity and in

his official capacity as mayor, alleging violations of the Fair Labor Standards Act ("FLSA") and his procedural due process. Rec. Doc. 1 at 9-13. He also asserted additional state law claims for unpaid wages and punitive damages. *Id*. at 13-15. Thereafter, Little amended his complaint to name Charles E. Mizell rather than Charles E. Mizell Jr. Rec. Doc. 3. He then voluntarily dismissed Charles E. Mizell, Jr. Rec. Doc. 4. Mizell and the City of Bogalusa later filed the instant motion for summary judgment.

## II.  THE PARTIES' CONTENTIONS

Defendants' motion, labeled as a motion for summary judgment, seeks dismissal of all claims against both Defendants because "Plaintiff failed to state a cause of action under federal and/or Louisiana state law, and there is no proof that the Defendants are liable to the Plaintiff for the relief sought." Rec. Doc. 16 at 1. First, Defendants contend that Plaintiff's claims for unpaid overtime wages under both federal and state law and his related claim for punitive damages should be dismissed because he cannot provide any dates or times that he worked for which he was not paid. *Id*. at 4. Additionally, they argue that Plaintiff's allegations do not state a valid cause of action for procedural due process violations because he admits that he retired rather than be fired. *Id*. at 6-7. Mizell further argues that Plaintiff voluntarily dismissed him from the suit and, in any event, he is entitled to qualified immunity because he did not violate clearly

4

established law. *Id*. at 7-8. Finally, Defendants maintain that Plaintiff has failed to identify a policy or custom to hold them vicariously liable. *Id*. at 11.

Little responds by claiming that he does have a valid claim for violations of procedural due process because the Defendants constructively discharged him without pre-deprivation notice, a hearing, or a meaningful opportunity to respond. Rec. Doc. 19 at 3. Essentially, he claims that he was forced to choose between voluntary resignation and forced termination. *Id*. at 6. Furthermore, Little argues that Mizell is not entitled to qualified immunity because his constructive discharge was in violation of a clearly established right to a pre-deprivation hearing. Rec. Doc. 19 at 8-10. He also counters the Defendants' argument that he failed to identify a relevant policy or custom by claiming that the City demonstrated a complete disregard for procedural due process requirements. *Id*. at 10. With respect to the wage claims challenged by Defendants, Plaintiff only discusses the state law claim for unpaid overtime wages. They claim that they are seeking eight hours of overtime that plaintiff should have been allowed to work on January 29, 2014 plus penalty wages and attorney's fees under LA. STAT. ANN. § 23:632. *Id*. at 11. For these reasons, Little urges the Court to deny the motion for summary judgment. Defendants' reply memorandum then attempts to counter the

constructive discharge and other arguments put forth by Little. Rec. Doc. 24.

### III. **LAW AND ANALYSIS**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof

6

that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). The Court will begin by addressing Plaintiff's due process claim.

### a. Plaintiff's Due Process Claim

"To state a § 1983 claim based on termination of employment without affording procedural due process, [the plaintiff] must allege that (1) she has a property interest in her employment sufficient to entitle her to due process protection, and (2) she was terminated without receiving the due process protection to which she was entitled." *Broussard v. Lafayette City-Parish Consol. Gov't*, 45 F. Supp. 3d 553, 568 (W.D. La. 2014) (quoting *LeBeouf v. Manning*, 575 Fed. Appx. 374, 376 (5th Cir. 2014)). *See also McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155-56 (5th Cir. 1996). Defendants do not contest that Plaintiff had a property interest in his employment, the issue here is whether he was terminated without receiving due process protection. *See* Rec. Doc. 16-1. Defendants claim that Little cannot maintain his procedural due process claim against either Defendant because he voluntarily retired and was never terminated. Rec. Doc. 16-1 at 6. However, Plaintiff maintains that he was constructively discharged. Rec. Doc. 19 at 3.

7

"To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Finch v. Fort Bend Ind. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003) (citing *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)). Put another way, a constructive discharge occurs when the employer places the employee "between the Scylla of voluntary resignation and the Charybdis of forced termination." *Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 981 (5th Cir. 1985). Whether a reasonable employee would feel compelled to resign depends on the facts and circumstances of each particular case, but the Fifth Circuit has provided a number of relevant factors to consider in making the determination: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not." *Barrow*, 10 F.3d at 297.

Here, Plaintiff does not demonstrate the applicability of any of the seven factors. While the seventh factor appears related to this case, Little does not demonstrate that retirement was offered to him as an alternative to termination. Instead, his deposition

testimony states that he felt like retirement was in his best interest. Rec. Doc. 16-5 at 37. Seemingly recognizing the inapplicability of any of those factors, Plaintiff points this Court's attention to *Findeisen v. North East Independent School District*, 749 F.2d 234, (5th Cir. 1984), and *Bueno v. City of Donna*, 714 F.2d 484 (5th Cir. 1983), to support his claim that he was constructively discharged. However, the Fifth Circuit has made clear that:

> *Findeisen* and *Bueno*, far from constitutionalizing *any* cause of action for constructive discharge, apply only in the narrow range of cases in which an employee confronts an either/or termination proposition, and it can be said that the state agency's motive is to avoid providing the pretermination remedy required by *Loudermill*.

*Fowler*, 799 F.2d at 981. This is not one of those narrow cases.

Plaintiff has failed to produce any evidence tending to establish that the City's motive was to avoid providing a pretermination hearing. Moreover, it is not even clear that Little was in that either/or scenario because it seems that suspension was still a real possibility. *See* Rec. Doc. 16-5 at 36. Accordingly, *Findeisen* and *Bueno* are not persuasive. None of Plaintiff's self-serving testimony is sufficient to show that the City requested, encouraged, or offered retirement as an alternative to termination, let alone that it did so to avoid its constitutional obligations. In fact, City officials held numerous

meetings with Little before he elected to retire; it does not follow that the City would force him into retirement simply to avoid another similar hearing that comported with the requirements of *Loudermill*. All Little has provided the Court with is subjective, self-serving testimony that is insufficient to prevent summary judgment. *See Hargay v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) ("[T]he assessment [of] whether real alternatives were offered is gauged by an objective standard rather than by the employee's purely subjective evaluation; that the employee may perceive his only option to be resignation . . . is irrelevant."). He has produced no evidence tending to show, by an objective standard, that he faced no option but to retire. Consequently, his due process claims must be dismissed.

### b. Plaintiff's Wage Claims

In his amended complaint, Plaintiff claims a violation of the FLSA for unpaid wages for certain overtime shifts that he worked or should have worked pursuant to the Union contract. Rec. Doc. 3 at 9. Plaintiff also claims that he is owed unpaid overtime wages from his last paycheck and that he is entitled to related penalty damages under LA. STAT. ANN. § 23:632. *Id*. at 11. Plaintiff cannot seek to recover unpaid overtime wages under both the FLSA and Louisiana state law because such state law claims are preempted by the FLSA if the employee was engaged in interstate commerce. *Kidder v. Statewide Transport, Inc.*, 2013-594, p. 6 (La. App. 3 Cir.

10

12/18/13); 129 So. 3d 875, 880. *See also Divine v. Levy*, 36 F. Supp. 55, 58 (W.D. La. 1940) ("Even though the penalties of both the state and federal statutes could be imposed without there being a direct conflict, we believe the penalty provision of the Federal Act, when invoked, becomes exclusive and the penalty provisions of the state statute may not be applied."). Further, if the employee engaged only in intrastate commerce, then the FLSA is wholly inapplicable. *See* 29 U.S.C. § 207(a). Because Plaintiff's opposition only addresses a "state law claim" for eight hours of overtime wages that he "should have been allowed to work on January 29, 2016 as well as penalty wages under § 23:632," Rec. Doc. 19 at 11, this Court reads it as conceding any FLSA claim and arguing for the applicability of La. Stat. Ann. § 23:631. As such, any and all claims under the FLSA are hereby dismissed.

With all of Plaintiff's federal law claims against the Defendants dismissed, that leaves only his state law wage claims over which this Court does not have original jurisdiction. Nevertheless, 28 U.S.C. § 1367(a) provides for supplemental jurisdiction over pendent state law claims that are sufficiently related to claims over which the Court has original jurisdiction. Yet, district courts may use their discretion to decline to exercise supplemental jurisdiction over such claims if, among other reasons, the state law claims substantially predominate over the claims with original jurisdiction or the court has dismissed

all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c). Here, the Court will exercise that discretion over Plaintiff's remaining state law claims, which are best left for resolution in the state court system.

### IV. <u>CONCLUSION</u>

For the reasons outlined above,

**IT IS ORDERED** that the motion is **GRANTED**. All of Plaintiff's federal claims are hereby **DISMISSED WITH PREJUDICE**. However, his remaining state law claims are **DISMISSED WITHOUT PREJUDICE** to bring in state court.

New Orleans, Louisiana, this 22nd day of June, 2016.

_____
UNITED STATES DISTRICT JUDGE